UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOHN DEVALIER DANIELS,<br>Defendant. | Case No. 12-cr-00574-PJH-3<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ADMISSION OF ADDITIONAL PARTS OF RECORDED STATEMENT PURSUANT TO FRE 106**<br><br>Re: Doc. No. 221 |

On May 31, 2017, the court held a hearing on the motion of defendant John Devalier Daniels pursuant to Rule 106 of the Federal Rules of Evidence ("FRE") to admit additional parts of his recorded statement, portions of which the government intends to introduce at trial. Doc. no. 221 ("Mot."). Having considered the relevant authority, the parties' papers, the arguments of counsel and the record, the court DENIES defendant's motion for the reasons stated at the hearing and set forth below.

The "rule of completeness" is codified in FRE 106, which provides as follows:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

Fed. R. Evid. 106. The rule of completeness exists to avert "misunderstanding or distortion" caused by introduction of only part of a document. *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)). "[I]f the 'complete statement does not serve to correct a misleading impression' in the edited statement that is created by taking something out of context, the

1 Rule of Completeness will not be applied to admit the full statement." *Id.* (quoting *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), *as amended*). Applicability of this rule is limited to writings and recorded statements and does not apply to conversations. Fed. R. Evid. 106, Advisory Committee Notes.

Here, Daniels has selected excerpts of his recorded statement to the Oakland police on November 12, 2014, which he argues must be admitted under the rule of completeness to correct misleading implications of the excerpts selected by the government. None of the excerpts identified by Daniels would "serve to correct a misleading impression" to warrant application of the rule of completeness:

1. Daniels argues that his statements that he had been shot at nearly every other day, had been almost killed at the After Hours Club, had been shot at in the Dubs, that his brother-in-law's house had been shot up, and that he was unable to come to Oakland, unfairly suggest that the Bottoms gang has been trying to kill Daniels in retaliation for killing the victim. Daniels offers other statements to explain that he has been shot at by people from the Acorn gang, and that he believes they are trying to prevent him from testifying against the shooter, even though the attempted shooting in the Dubs occurred prior to the homicide. The government indicates that it seeks to admit statements which tend to prove Daniels's willing participation in a criminal association and his knowledge about what that entailed. Doc. no. 227 ("Opp.") at 5. The court determines that the excerpts identified by the government do not distort the facts that Daniels has been shot at numerous times, and counsel is free to argue about the implications of those attempted shootings.

2. Daniels argues that his statements that his wife's friend, Sarah, rented the car involved in the homicide, that he had driven the car to Acorn before the drive-by shooting, that Gap sat in the back seat, that the gun used in the homicide was a semiautomatic, that Daniels drove the car away from the shooting, and that the car was ditched after the homicide, are likely to be misconstrued as admitting guilt. Daniels contends that the jury should also hear his statements elaborating on his connection to

2

1   the car and to the shooting, and that he didn't know that the shooter had a gun or that the
2   shooting was going to happen, that he didn't know the victim's identity, and that he was
3   planning to drive to Nick's house to buy more weed when Jermaine unexpectedly pulled
4   out a gun and shot the victim.  Mot. at 10.  The court determines that the statements
5   designated by the government are not taken out of context and tend to show the facts
6   that Daniels was driving the SUV during a drive-by shooting and do not suggest that he
7   was the shooter; that Daniels saw the gun that was used and could describe it; that the
8   SUV was ditched after the shooting; and that Daniels asked his wife and her friend to
9   report the SUV stolen.  *See United States v. Dorrell*, 758 F.2d 427, 434-35 (9th Cir. 1985)
10  ("Where the redacted statement is a confession, courts have held that there is no
11  violation of the rule of completeness if the edited version neither 'distorts the meaning of
12  the statement or excludes information substantially exculpatory of the declarant,' nor
13  excludes 'portions of a statement that are ... neither explanatory of [or] relevant to the
14  admitted passages.'") (quoting *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir.
15  1982)).

16  The additional statements proffered by Daniels do not alter the meaning of his
17  statements designated by the government; for example, Daniels did not state elsewhere
18  that he did not drive the SUV on the day of the shooting.  Without being necessary to
19  avoid misunderstanding or distortion, these exculpatory statements are inadmissible
20  hearsay.  *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("Even if the rule of
21  completeness did apply, exclusion of Ortega's exculpatory statements was proper
22  because these statements would still have constituted inadmissible hearsay.") (citing
23  *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (finding that "rule 106 'does
24  not compel admission of otherwise inadmissible hearsay evidence'")).

25  To the extent that Daniels seeks to admit additional statements to explain further
26  his motivations for his actions, such as driving Jermaine Earnest on the day of the
27  shooting to buy weed from Nick or telling his wife and Sarah to report the SUV as stolen,
28  the additional statements "[do] not serve to correct a misleading impression" in the edited

3

statements in that none of the government's designated statements purport to be an admission by Daniels that he knew that Earnest had a gun before driving him to the Bottoms, that he knew Earnest planned a drive-by shooting, or that he himself ditched the SUV. *See Dorrell*, 758 F.2d at 435 (removing the defendant's explanation of motivations for his actions did not change the meaning of the portions of his confession submitted to the jury where the redaction did not alter the fact that he admitted committing the acts with which he was charged). The government indicates that it carefully selected excerpts of Daniels's recorded statement to omit any reference to Earnest so as to avoid *Bruton* implications in a joint trial. Opp. at 6. The excerpts designated by the government include Daniels's own timeline of what he did the day of the shooting, which is not distorted or mischaracterized outside the context of Jermaine Earnest's role in the homicide. Most importantly, there is nothing to suggest that Daniels, rather than someone else, was the shooter.

3. Daniels's statements to his wife that he told the police "everything" could mislead the jury into believing that the limited excerpts introduced by the government actually reflect everything he told the police, without hearing Daniels's explanation that he was innocent. The court determines that this statement is not misleading or taken out of context because Daniels does not state elsewhere that he did not tell the police everything, and because there will be indications that the designated snippets of Daniels's statements are not everything that he said, such as the time stamp jumping ahead. Thus, the jury will not be misled to believe that the portions of his statements admitted into evidence comprise the totality of his statements to the police.

4. Daniels's statements that he did not tell his wife or the police about the homicide before the recorded interview could be misconstrued as evidence of his consciousness of guilt. Daniels seeks to admit his exculpatory explanations for his behavior, including threats from Jermaine and other persons from the Bottoms to kill Daniels and his wife if Daniels reported Jermaine. Such explanations for why a defendant took certain action or failed to act are not admissible under the rule of

4

completeness where, as here, the inculpatory statements do not depend on the meaning of what was communicated in the exculpatory statement. *See United States v. Castro-Cabrera,* 534 F. Supp. 2d 1156, 1161 (C.D. Cal. 2008).

5. The excerpt at 41:24-25, where Daniels stated he's "been doing this s--- 20, 30 years", has been WITHDRAWN by the government, and Daniels has withdrawn his request to include excerpts referring to his job and church attendance.

6. Daniels argues that his criticism of the effectiveness of the Operation Cease Fire program to stop gang violence could mislead the jury into inferring that he had expertise due to his membership in a gang involved in gang rivalries. Daniels proposes that this misunderstanding could be cured by including his other statements that he never had problems with people from the Bottoms and that he used to be able to go anywhere in Oakland without being targeted. The court determines that the excerpt in which Daniels criticizes Cease Fire does not mischaracterize his statement that the Cease Fire program is not effective, expressing his personal opinion based on his familiarity with the neighborhood, which is not distorted in the context of his other statements indicating that he has been shot at and has been around people with guns.

Accordingly, Daniels's motion for admission of additional parts of his recorded statement pursuant to FRE 106 is DENIED.

**IT IS SO ORDERED.**

Dated: June 7, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge