UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOHN DEVALIER DANIELS,<br>Defendant. | Case No. 12-cr-00574-PJH-3<br>**PRETRIAL ORDER**<br>Re: Doc. Nos. 348, 358, 368, 334, 357,<br>382, 385, 388, 392, 401 |

On May 2, 2018, this matter came on for pretrial conference and for hearing on the parties' motions in limine and objections jointly filed by defendants John Devalier Daniels and Jermaine Earnest to the government's notice of coconspirator statements. Defendant Earnest having entered a guilty plea pursuant to a Rule 11(c)(1)(C) plea agreement, the court rules on the motions in limine, admissibility of coconspirator statements and other disputed pretrial matters with respect to defendant Daniels for the reasons stated on the record and summarized below.

**I.  Motions in Limine**

  **A.  Government's Motions in Limine (doc. no. 358)**

  1.  In light of Earnest's change of plea, the government has withdrawn three shooting incidents in June 2014 and two firearm possessions by Earnest, in addition to the previously withdrawn robberies by Daniels on October 9-10, 2013, from the list of predicate and non-predicate acts that it will seek to prove. Subject to this modification, Gov't MIL No. 1 to admit evidence of predicate and non-predicate acts as directly related to or "inextricably intertwined" with the crimes charged in the indictment, and to allow the

government to impeach Daniels with prior convictions if he testifies pursuant to FRE 609, is GRANTED.

2. Gov't MIL No. 2 to admit evidence of defendant's statements on recorded jail calls, social media posts, text messages and verbal statements to police officers as party admissions pursuant to FRE 801(d)(2)(A) or as non-hearsay, as modified to withdraw statements by Earnest, is GRANTED. The government request for a ruling that defendant may not offer his own prior statements at trial, unless he testifies, is DENIED IN PART as to Daniels's statements that the court finds admissible in its ruling on defendant's MIL No. 11, and GRANTED IN REMAINING PART.

3. Gov't MIL No. 3 to admit the plea agreements made by cooperating witnesses in anticipation of attacks on their credibility by the defense is GRANTED subject to the following limitations:

(a) The truthfulness provisions of the plea agreements must remain redacted, unless the witness's credibility is attacked. *See U.S. v. Monroe*, 943 F.2d 1007, 1013 (9th Cir. 1991) ("a reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain").

(b) The government's questioning during its case-in-chief is limited to the existence and terms of the guilty pleas and plea agreements, including the factual basis of the plea, the fact that the cooperator has yet to be sentenced, and the hope of receiving a reduced sentence partly due to their testimony at trial.

(c) References to the potential sentence or potential maximum statutory sentence that the cooperator could receive must be redacted because it may signal to the jury the punishment that defendant is facing, which is a prohibited consideration; however, the court will permit evidence of a mandatory minimum sentence that a witness faces. *See U.S. v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007) (en banc) (district court may prohibit cross-examination regarding the

potential maximum statutory sentence that the witness faces, which lacks significant probative force because a defendant seldom receives the maximum penalty permissible under the statute of conviction; by contrast, the mandatory minimum sentence that a witness will receive in the absence of a government motion is "highly relevant to the witness' credibility").

    (d) To minimize the risk of undue prejudice to defendant by introducing evidence of the cooperating witnesses' plea agreements, the court will give limiting instructions based on Ninth Circuit Model Criminal Jury Instruction 4.9, as proposed by the parties.

Defendant's objection to admitting the factual summary in each plea agreement is OVERRULED because the summary of the conduct that the cooperating witness admitted to committing is not unduly prejudicial and the cooperating witnesses will be subject to cross examination at trial.

    4. Gov't MIL No. 4 to require that defendant may not assert that a specific third party is guilty without some showing of admissible evidence to support that defense theory, pursuant to FRE 402 or FRE 403, is DENIED. *See United States v. Espinoza*, 880 F.3d 506, 514 (9th Cir. 2018).

    5. Gov't MIL No. 5 to require defendant to make an offer of proof and offer of relevance of any alleged misconduct by law enforcement officers, including citizen complaints or news reports, prior to introducing such evidence to the jury is DENIED AS PREMATURE, given that the *Giglio* materials were produced in court on the day of the pretrial conference. With respect to such evidence, the court provides the following guidance: any unsubstantiated claims, complaints or reports against an officer that did not result in judgments, findings of liability, relevant admissions, or potential inconsistent statements would not be relevant and would be unduly prejudicial, and would therefore be inadmissible, unless evidence at trial provides a foundation for cross-examination under FRE 608(b). Following the production of *Giglio* materials, defendants' joint motion for issuance of subpoenas is hereby TERMINATED as moot. Doc. no. 348.

**B. Defendant's Motions in Limine (doc. no. 368)**

1. Def. MIL No. 1 to require the government to make an affirmative showing that the predicate acts and uncharged acts constitute proof of the conspiracy before trial is DENIED. As the court determined in granting Gov't MIL No. 1 to admit predicate and non-predicate acts without requiring FRE 404(b) analysis, the acts identified by the government have a contextual or substantive nexus to the alleged purposes of the charged racketeering enterprise and fall within the scope of the manner and means of the conspiracy alleged in the Second Superseding Indictment ("2SI"), and are therefore inextricably intertwined or connected with the charged conspiracy. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).

2. Def. MIL No. 2 to exclude prior acts pursuant to FRE 403 as unduly prejudicial and cumulative is DENIED in light of the government's representation that it will present limited evidence about the November 28, 2011 shooting, as stated on the record. With respect to evidence of the six prior robberies by Daniels, the court determines that this evidence is not unduly prejudicial and will give a limiting instruction, to be requested by the defense, to minimize the risk that the robberies would be considered as evidence of criminal propensity.

3. Def. MIL No. 3 to exclude evidence that Daniels and Earnest were the victims of a shooting by an unknown assailant on August 28, 2013, as irrelevant, unduly prejudicial, and as hearsay, is DENIED, in light of the government's concession that the statement by the refused citizen to the police is inadmissible. The parties are instructed to propose a limiting instruction to clarify that Daniels was not charged in that shooting.

4. Def. MIL No. 4 to exclude lay witness testimony referring to the term "gang" is DENIED. *See United States v. Fernandez*, 388 F.3d 1199, 1215 (9th Cir. 2004), *modified by* 425 F.3d 1248 (9th Cir. 2005).

5. Def. MIL No. 5 to exclude evidence of a letter received by Cooperator B in jail on July 28, 2015, and of an assault on Cooperator B in jail on October 10, 2015, is DENIED. Defendant's motion to exclude evidence that Cooperators A and B are in

4

1  protective custody as unduly prejudicial is GRANTED, except that the government may introduce rebuttal evidence that Earnest was moved after Cooperator B complained about threats, but not during its case in chief.

6. Def. MIL No. 6 to exclude defendants' booking photos and jail records, except as directly relevant to an issue at trial, as unduly prejudicial is GRANTED, subject to exceptions for the limited uses proffered by the government: booking photos will be limited to photo lineups that were shown to witnesses and jail housing records may be used only on rebuttal.

7. Def. MIL No. 7 to exclude surveillance footage on April 16, 2014, depicting the victim M.F. from inside the store where he ran inside after being shot and collapsed, photographs of the crime scene that include pictures of the victim after the shooting and autopsy pictures, and photos of the November 6, 2011 shooting victim, as lacking probative value and being unduly prejudicial, is DENIED on the ground that the photos are highly probative and not unfairly or unduly prejudicial.

8. Def. MIL No. 8 to exclude Daniels's references to Ghost Town, the Ceasefire program, and stopping violence as inviting speculation and being unduly prejudicial is DENIED.

9. Def. MIL No. 9 to exclude Cooperator B's testimony that others told him that Earnest had bragged about a shooting as hearsay is GRANTED as unopposed.

10. Def. MIL No. 10 to exclude Daniels's prior felony convictions for impeachment purposes if he testifies at trial is DENIED pursuant to FRE 609(a)(1)(B). *See United States v. Martinez-Martinez*, 369 F.3d 1076, 1088 (9th Cir. 2004) (citing *United States v. Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir. 1979) (en banc), *overruled on other grounds, Luce v. United States*, 469 U.S. 38 (1984)); *United States v. Givens*, 767 F.2d 574, 580 (9th Cir. 1985). The court determines that the probative value of the prior convictions outweighs their prejudicial effect under the five *Cook* factors, in light of the government's agreement to elicit only the fact that Daniels was convicted of felonies on three occasions, and not to elicit the nature of the prior convictions unless he opens the

5

1 door by denying them.

2     11.    Def. MIL No. 11 to exclude jail calls that lack probative value and are outweighed by undue prejudice pursuant to FRE 403 and to include portions of jail calls under the Rule of Completeness is GRANTED IN PART as to Daniels's statements to his wife about getting shot at during a 12/5/14 jail call, 1417623740_195.wav.  Accordingly, the government must include the statements preceding the designated excerpt, starting from page 9, line 12 of the transcript.  Def. MILs, Ex. A at 18-19; also submitted as Gov't MILs, Ex. 4 Tab 10).  Def. MIL No. 11 is DENIED IN REMAINING PART.

## II.    Coconspirator Statements (doc. no. 357)

Following the protocol set forth in the court's revised order for pretrial preparation, doc. no. 309, the government filed a notice as to each coconspirator statement that it seeks to introduce at trial.  Doc. no. 334 ("Not. Coconsp. St.").  Defendants Daniels and Earnest filed objections to the government's notice of coconspirator statements, doc. no. 357, to which the government filed responses, doc. no. 388.

As stated on the record, the court determines that the government has demonstrated, by a preponderance of the evidence, two of the three prongs required for admissibility of the proffered coconspirator statements: (1) the conspiracy existed when the statement was made, and (2) the defendant had knowledge of, and participated in, the conspiracy.  *United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007).  The court will determine the third *Larson* prong, whether the statement was made "in furtherance" of the conspiracy, after the witness testifies and/or the documentary evidence containing the particular coconspirator statement is introduced.  The government's preliminary showing is sufficient for conditional admission of the proffered coconspirator statements, except for those which the court determines are inadmissible pursuant to FRE 802(d)(2)(E) as set forth below.

The court rules on Daniels's objections to the coconspirator statements proffered by the government as follows:

A. Defendant's objection on the ground that the declarant is unknown is SUSTAINED as to (1) the Facebook message from "Strip Stxt" to Earnest dated 10/11/2011; and (2) statements by Unidentified Males in the jail calls to Earnest. Defendant's objection is OVERRULED as to the "paperwork" statement made to Cooperator B by one of the two known inmates who assaulted him on October 10, 2005.

B. Defendant's objection to the statement attributed to his lawyer, which the government concedes it will not use, and statements by Earnest's mother, Michelle M., on the ground that the declarant is not a conspirator is SUSTAINED. The government alternatively seeks to admit statements by Michelle M. during a recorded jail call on 3/9/2016, about "Keesha going to get on what's her name yesterday," as non-hearsay for context and to show the effect on Earnest, whose responses were previously noticed as party admissions and are admissible as coconspirator statements. The court will admit Michelle M.'s statements to Earnest for this limited purpose; the parties are directed to propose a limiting instruction to consider Michelle M.'s statements only to show the effect on Earnest.

C. Defendant's objection to admissibility pursuant to FRE 801(d)(2)(E) on the ground that the statements do not further the conspiracy is OVERRULED as to (1) statements about incarcerated individuals; (2) statements about past criminal conduct; (3) Nathaniel's comment that "Fred's a goer" in a recorded 12/5/2011 jail call; and (4) Cooperator B's Facebook post on 9/8/2012 about "bay area rappers." *See United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988).

Defendant's objection on this ground is SUSTAINED as to (5) Daniels's Facebook posts and (6) Earnest and Kiesha's comments about fighting baby mamas during a recorded jail call on 2/25/2016, which cannot be reasonably construed to further the conspiracy. However, the court determines that Daniels's Facebook posts are admissible as party admissions, except for the 10/31/2012 comment on photo of Ronald Perry: "That was a nigga right hand," which is excluded. Furthermore, the government alternatively seeks to admit Earnest and Kiesha's discussion about fighting baby mamas for context to

7

show that while Kiesha would not agree to beat up Earnest's girlfriend, by contrast, Kiesha did agree to beat up Cooperator B's girlfriend at Earnest's request. The court will admit the designated excerpt of Earnest and Kiesha's conversation about his baby mama for this limited purpose of providing context for their preceding comments about "you want me to get on Ku-Ku," which are admissible as coconspirator statements. The parties are directed to propose a limiting instruction to consider the baby mama comments only for this non-hearsay purpose.

Defendant's objection is TENTATIVELY OVERRULED as to (7) unsent messages containing rap lyrics saved on Cooperator B's cell phone, and (8) Earnest's statements asking for money, but the government must first establish an evidentiary basis to offer these statements as being in furtherance of the conspiracy before introducing the statements at trial.

D. Defendant's objection to statements containing unexplained slang terms or opaque references to past events that the government has not explained, on the ground that they cannot be said to further the conspiracy is TENTATIVELY OVERRULED, but the government must first explain the meaning of the statements and establish a foundation for their admissibility.

E. Defendant's objection to any statement that was made while the declarant was in custody is TENTATIVELY OVERRULED, but the government must first establish an evidentiary basis to show that the declarant continued to participate in the conspiracy after being incarcerated. *See United States v. Martinez*, 657 F.3d 811, 817 (9th Cir. 2011) (statement by incarcerated Mexican Mafia member was admissible as that of a coconspirator advancing the conspiracy's aim to maintain power in the prisons); *United States v. Saavedra*, 684 F.2d 1293, 1298 (9th Cir. 1982) (noting in dicta that any statement made by the defendant after her arrest could not be admissible as a coconspirator statement given her role as one of the "outside persons" in the fraudulent scheme, which operated out of a county jail, but holding that a fraudulent statement by an incarcerated coconspirator was admissible against her as a coconspirator statement).

8

**III.	Jury Instructions (doc. nos. 383, 385, 392, 401)**

**A. Joint Proposed Instructions**

The court approves the jointly proposed instructions, subject to correcting Jointly Proposed Instruction No. 23: Defendant's Decision Not to Testify, to conform to the current version of the Ninth Circuit Model Criminal Jury Instructions, No. 3.3 which was revised in December 2017.

The parties are instructed to file a jointly revised set of instructions to reflect a single defendant and to comply with the court's pretrial rulings, as well as jointly proposed limiting instructions required in the rulings on the MILs, by no later than May 29, 2018. The parties must email a Microsoft Word version of the instructions to PJHPO@cand.uscourts.gov.

**B. Disputed Instructions**

**1.	Instruction No. 2: The Charges - Presumption of Innocence**

The court sustains defendant's objection to references to "the Acorn gang" throughout the government's proposed instruction. The court also notes that the government proposes that the title of the summary Count Four refer to Aiding and Abetting, which was not charged in the 2SI and will be omitted. For the reasons stated on the record, the court adopts defendant's proposed version of Instruction No. 2, modified to refer to a single defendant and to omit Count Five against Earnest, as follows:

> 2.	THE CHARGES—PRESUMPTION OF INNOCENCE
>
> This is a criminal case brought by the United States government. The government has charged defendant John Devalier Daniels. The charges against the defendant are contained in the indictment. The indictment simply describes the charges the government brings against the defendant. The indictment is not evidence and does not prove anything.
>
> The defendant has pleaded not guilty to the charges and is presumed innocent unless and until the government proves him guilty beyond a reasonable doubt. In addition, the defendant has the right to

remain silent and never has to prove innocence or to present any evidence.

In order to help you follow the evidence, I will now give you a brief summary of the crimes that the government has charged in the indictment.

<u>Count One: Racketeering Conspiracy or "RICO" Conspiracy</u>
Defendant John Devalier Daniels is charged in Count One with conspiring to engage in the conduct of the affairs of a racketeering enterprise through a pattern of racketeering beginning as early as 2004 and continuing to as late as January 25, 2018, also called "racketeering conspiracy" or "RICO conspiracy." The racketeering enterprise that is alleged in the indictment is Acorn.

<u>Count Two: Murder in Aid of Racketeering</u>
Defendant John Devalier Daniels is charged in Count Two with the murder of Marjon Fuller on or about April 16, 2014, for the purpose of gaining entrance to, or maintaining or increasing his position in Acorn, also called "murder in aid of racketeering."

<u>Count Three: Use of a Firearm in Furtherance of a Crime of Violence Causing Death</u>
Defendant John Devalier Daniels is charged in Count Three with using a firearm in furtherance of a crime of violence causing the death of Marjon Fuller charged in Count Two.

<u>Count Four: Use/Possession of a Firearm in Furtherance of a Crime of Violence</u>
Defendant John Devalier Daniels is charged in Count Four with using or carrying a firearm during and in relation to the murder of Marjon Fuller charged in Count Two, or possessing a firearm in furtherance of, the murder of Marjon Fuller charged in Count Two.

**2.     Instruction No. 5: Direct and Circumstantial Evidence**

The parties agree on using Model Instruction No. 1.5; defendant's objection to the government's proposal to add a third paragraph with an example taken from the Comment to the model instruction, is SUSTAINED. The court adopts defendant's proposed instruction as follows:

### 5. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find another fact.

You are to consider both direct and circumstantial evidence. Either can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**3.     Instruction No. 18: Other Crimes, Wrongs or Acts of Defendant, and**

**4.     Instruction No. 35: Other Crimes, Wrongs or Acts of Defendant**

Defendant's request to give instructions to limit consideration of other acts that are admitted as proof of the existence of the Acorn racketeering enterprise is DENIED.

**5.     Instruction No. 52: Racketeering Conspiracy - Elements**

The parties propose competing instructions on the elements of a racketeering conspiracy and in the absence of a model instruction. The court rules on the disputed issues as follows:

(a) ADOPT defendant's references to "Acorn" instead of "the Acorn gang."

(b) DENY government's proposed description of the enterprise, where the 2SI does not include subsets in defining the alleged enterprise.

(c) DENY defendant's proposal that defendant must personally agree to be associated with, and participate in, the enterprise. *See Salinas v. United States*, 522 U.S. 52, 63-64 (1997); *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004), *modified by* 425 F.3d 1248 (9th Cir. 2005). Where the parties have proposed other instructions that more fully define the required elements of a racketeering conspiracy, this instruction does not create a risk that the elements of the § 1962(d) would be obscured, which concerned the court in *United States v. Young*, No. 15-50158, 2017 WL 6603511, at *3 (9th Cir. Dec. 27, 2017), *mandate issued* Feb. 12, 2018.

Accordingly, the court will give the following instruction:

## 52. RACKETEERING CONSPIRACY– ELEMENTS

I will now instruct you on the elements of the crimes charged, beginning with Count One.

Count One charges that defendant—along with others known and unknown—knowingly and intentionally conspired with at least one other person to conduct or to participate in the conduct of the affairs of a racketeering enterprise—specifically, the indictment alleges that the enterprise is Acorn, including its leadership, members, and associates. For simplicity, I will refer to the enterprise as "Acorn" and I will refer to this alleged conspiracy as the "RICO Conspiracy." RICO refers to the Racketeer Influenced and Corrupt Organization Act found at Sections 1961 and 1962 of Title 18 of the United States Code.

In order for a defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the charged enterprise – which is Acorn – was or would be established;

Second, the enterprise or its activities would affect interstate or foreign commerce;

Third, the defendant knowingly agreed that either he or another person would be associated with the enterprise; and

Fourth, the defendant knowingly agreed that either he or another person would conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

In order for you to convict a defendant of racketeering or RICO conspiracy, the government must prove beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy would intentionally commit, or cause, or aid and abet the commission of, two or more racketeering acts. That one member could be the defendant himself, or another person. You must unanimously agree on at least two racketeering acts the defendant understood would be committed. The government is not required to

prove that defendant personally committed, or agreed to personally commit, two or more racketeering acts.

In order to find a defendant guilty of racketeering conspiracy, the government must prove beyond a reasonable doubt that the defendant joined the conspiracy charged in the indictment knowing the conspiracy's purpose and intending to facilitate it. The defendant must also know the essential nature and scope of the enterprise.

**6.     Instruction No. 53: Racketeering Conspiracy - Elements - Enterprise**

The parties agree to using a modified version Model Instruction No. 8.152, but dispute the government's use of the term "the Acorn gang" and additional paragraph about features that are not required of an enterprise.  The court adopts defendant's proposed instruction No. 53.

**7.     Instruction No. 55: Racketeering Conspiracy - Elements - Employed By or Associated With**

The parties agree to give a modified version of Model Instructions 8.20, 8.152, 8.155, and 8.161, but defendant proposes changing references to "a conspirator" or "any particular conspirator" to "the defendant," based on the same arguments made about Instruction No. 52.  As the modifications proposed by the defense are not supported by controlling authority, the court adopts the government's proposed instruction No. 55.

**8.     Instruction No. 57: Racketeering Conspiracy - Elements - "Racketeering Act" Defined**

The parties agree to give an instruction defining "racketeering act," based on jury charges given in other RICO trials.  Defendant's objection to the additional language proposed by the government as repetitive of earlier instructions and highlighting favorable instructions is SUSTAINED.  The court adopts defendant's proposed instruction No. 57.

**9.     Instruction No. 62: Racketeering Conspiracy - Elements - Racketeering Activity - Robbery**

The parties agree to give the first two paragraphs taken from CALCRIM 1600, but defendant adds optional language which is potentially confusing.  The court adopts the government's proposed instruction No. 62, with the following modification to element (6):

"when the person used force or fear, the person <u>specifically</u> intended ~~property, he or she specifically intends~~ to permanently deprive the property from whomever it was taken.

**10. Gov't Proposed Instruction No. 69: Conspiracy—Liability for Substantive Offense Committed by Coconspirator (*Pinkerton* Charge)**

Defendant objects to the government's request to give Model Instruction No. 8.25 for a *Pinkerton* charge on liability for substantive offense committed by coconspirator. "*Pinkerton* renders all co-conspirators criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined, whether they were aware of them or not." *United States v. Bingham*, 653 F.3d 983, 997 (9th Cir. 2011) (citing *Pinkerton v. United States,* 328 U.S. 640 (1946)) (internal citation and marks omitted). Subject to the government's agreement not to argue *Pinkerton* liability during opening statement, but only refer to the relevant facts, the court TENTATIVELY ADOPTS the government's proposed instruction No. 69, subject to the evidence at trial.

**11. Proposed Instruction No. 72: Murder in Aid of Racketeering**

The parties agree to give a modified version of Model Instruction No. 8.151 (Violent Crime In Aid Of Racketeering Enterprise), but dispute defendant's contention that the purpose requirement must be satisfied by a finding that the murder would not have been committed "but for" defendant's desire to gain, maintain, or increase his status in the enterprise. In the absence of controlling authority applying the but-for causation standard to the VICAR context, defendant's proposal to modify the model instruction is DENIED. *See Young*, 2017 WL 6603511, at *3. However, the court agrees with defendant that the "substantial purpose" standard used in the model instruction raises vagueness concerns, and orders the parties to meet and confer on modified language that complies with *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008) ("although the law does not require that the defendant's gang-related purpose be his primary or sole purpose, it does require that his purpose be more than merely incidental: It must be within his 'general' purpose, or, in the alternative, the violence committed must be in some way 'integral' to the defendant's membership in the gang").

14

**12. Proposed Defense Instruction No. 1: Mere Presence**

Defendant's request to give Model Instruction 6.10 that mere presence at the scene of a crime, or mere knowledge that a crime is being committed, is not sufficient to show that he committed the crime, is TENTATIVELY DENIED, subject to determining whether the evidence supports this instruction. *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992) ("If the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary.") (citation omitted).

**13. Proposed Defense Instruction No. 2: Multiple Conspiracies**

Defendant asks for Model Instruction No. 8.22 on multiple conspiracies if the evidence at trial could support a finding that he was involved only in a separate conspiracy unrelated to the overall Acorn conspiracy charged in the indictment, or if the alleged subsets were separate conspiracies from Acorn. In the absence of an objection from the government to giving this instruction if the court determines at the close of evidence that it is warranted, the court DEFERS RULING on this instruction.

**14. Proposed Defense Instruction No. 3: Membership in a Gang Is Not a Crime**

Defendant requests an instruction that membership in a gang is not a crime, to ensure that the jury does not convict defendants based on their mere association with the Acorn gang, rather than finding that the government proved all the elements of a RICO conspiracy. Defendant agrees to the instruction proposed by the government, which it proposes to use only if the court determines that it is supported by the evidence. *See United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (citation omitted). The court DEFERS RULING on this instruction until the close of evidence.

**15. Defendant's Proposed Instructions on Implicit Bias**

The court declines to use the instructions proposed by defendant, doc. no. 401, but will give a preliminary instruction about being aware of implicit bias at the beginning of the case.

15

## IV. Verdict Form (doc. no. 381)

In light of Earnest's change of plea, the parties are instructed to submit a revised verdict form to refer to a single defendant by May 30, 2018.

## V. Juror Questionnaire and Voir Dire

The court will consider the voir dire questions and competing summaries of the case proposed by the parties, doc. no. 389, 390, 398. The court will prepare a juror questionnaire in advance, incorporating some of the questions that are better suited for written responses.

To determine whether potential jurors are acquainted with any witnesses, the court will include the names of witnesses in the written questionnaire, rather than read their names aloud to the venire. The parties are directed to file their witness lists no later than May 30, 2018, to provide sufficient time for the court to prepare the questionnaires which the jurors will complete on June 4, 2018. Counsel may contact the courtroom deputy to obtain copies of the completed questionnaires after 11:00 am, June 4, 2018.

Each side will be allowed 30 minutes to conduct voir dire after the court has concluded its voir dire.

**IT IS SO ORDERED.**

Dated: May 4, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge