1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

v.

JOHN DEVALIER DANIELS,

Defendant/Movant.

Case No. 12-cr-00574-PJH-3

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Re: Dkt. Nos. 516, 523

Before the court is the motion of defendant John Devalier Daniels for reduction of sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

Defendant initially filed a pro se motion for compassionate release on March 4, 2021. See Dkt. 516. However, at the time that the first motion was filed, defendant also had a pending Rule 60(b) motion for relief from the court's order denying his petition under 28 U.S.C. § 2255. See Dkt. 512. Because the Rule 60(b) motion was filed first, and because, if granted, it could moot the compassionate release motion, the court set a briefing schedule on the Rule 60(b) motion before considering the compassionate release motion.

Before the court ruled upon the Rule 60(b) motion, defendant filed a second pro se motion for compassionate release.[1] See Dkt. 523. After ruling on the Rule 60(b) motion, the court then issued an order setting a briefing schedule on defendant's motion for

_____

[1] Because both motions for compassionate release seek the same relief, the court will refer to them in this order collectively as the "motion," in the singular.

compassionate release.  See Dkt. 525.  In the order, the court noted that, pursuant to this court's Miscellaneous Order 2019.01.25, defendant's pro se motion for compassionate release was referred to the Federal Public Defender, who had "21 days to decide whether to assume representation of the defendant."  The court also noted that there is no Sixth Amendment right to counsel with respect to a motion under 18 U.S.C. § 3582(c).  United States v. Townsend, 98 F.3d 510, 512-513 (9th Cir. 1996).  Nor is there a statutory right to counsel in connection with a motion brought under 18 U.S.C. § 3582(c).

After defendant's first pro se motion for compassionate release was filed, more than 21 days passed without the FPD assuming representation.  Also, after defendant's second pro se motion for compassionate release was filed, more than 21 days passed without the FPD assuming representation.  Accordingly, the court's order stated that the motion would proceed pro se.

The government filed an opposition to the motion for compassionate release.  See Dkt. 529.  The Probation Office also provided a response to the compassionate release motion.  See Dkt. 527.  Defendant did not file a reply.  Having considered the relevant authorities and having reviewed the record and the parties' papers, the court DENIES the motion for compassionate release for the reasons set forth below.

## I.    BACKGROUND

On June 18, 2015, defendant John Devalier Daniels was charged with murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and (2), use of a firearm in furtherance of a crime of violence causing death in violation of 18 U.S.C. § 924(j)(1), use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  Dkt. 443 at 4.

On May 7, 2018, defendant pled guilty to racketeering conspiracy under 18 U.S.C. § 1962(d).  Dkt. 410.  The remaining counts against defendant were dismissed on the government's motion.  See Dkt. 447.  In the plea agreement, defendant admitted that he was affiliated with the "Acorn" street gang, and that "members of Acorn are involved in narcotics trafficking, violent crimes – including murder, conspiracy to commit murder,

attempted murder, aggravated assault, robbery – witness tampering, and obstruction of justice." Dkt. 410 at 2.  Defendant further stated that, on or about April 16, 2014, he "drove down to the high rise apartments at 8th and Adeline streets in Oakland" and "picked up two other Acorn gang members."  Id. at 3.  Defendant and his passengers saw "a member of a rival group to Acorn."  Id.  Defendant "circled the block" and then "drove back to where the male individual was crossing the street."  Id.  "Another Acorn member sitting in the vehicle took out a firearm and fired several shots at the male individual," and then defendant "sped away from the scene with the shooter in the vehicle."  Id. Defendant later learned that the victim died as a result of the shooting.  Id.  Defendant further admitted in his plea agreement that "[a]fter this murder committed by my fellow gang member, I continued my membership in the Acorn enterprise."  Id.

Defendant's sentencing hearing was scheduled for September 5, 2018.  See Dkt. 446.  The Probation Office concluded that the Guidelines range for defendant's offense was 360 months to life.  Dkt. 443 at 39.  The government, however, disagreed with the Probation Office's calculation, and recommended a lower Guidelines range of 168 to 210 months.  Dkt. 445 at 3-4.  The court sentenced Daniels to a term of imprisonment of 168 months.  See Dkt. 447.

Defendant is presently in the custody of the Bureau of Prisons ("BOP") at FCI Victorville.  The parties have competing calculations as to the amount of time that defendant has served and the amount of time remaining on his sentence.  Neither party has attached the BOP's own calculation.  The government claims that defendant has served approximately six years and seven months (79 months) of his sentence, and that he has approximately 65 months remaining on his prison term, based on a projected release date of March 14, 2027.  Dkt. 529 at 3.  Defendant claims that he has served approximately eight years (96 months) of his sentence, and that he has approximately 59 months remaining on his prison term, based on a projected release date of September 17, 2026.  Dkt. 523 at 2.  Again, because neither party has submitted the BOP's own calculation of defendant's time served and time remaining with good time credits, the

1   court cannot verify either of the party's calculations.

2       Defendant now seeks a reduction of sentence pursuant to the compassionate

3   release provision of § 3582(c)(1)(A).  Defendant's first motion sought relief based on

4   conditions related to the COVID-19 pandemic.  See Dkt. 516.  Defendant's second

5   motion also seeks relief based on conditions related to the COVID-19 pandemic, arguing

6   that he suffers from asthma, that he has suffered damage to his mental health, and that

7   "there is no evidence a vaccine will be effective."  Dkt. 523 at 1-2.

8   **II.    DISCUSSION**

9       **A.    Legal Standard**

10      A court generally may not correct or modify a prison sentence once it has been

11  imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of

12  Criminal Procedure.  United States v. Penna, 319 F.3d 509, 511 (9th Cir. 2003).  The

13  court may modify a previously imposed sentence upon motion of the BOP or motion of

14  the defendant under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A),

15  as amended by the First Step Act which added a provision to allow defendants, not only

16  the Director of the BOP, to file a motion for reduction of sentence after exhausting

17  administrative remedies or waiting 30 days after the warden's receipt of a request.  See

18  United States v. Rodriguez, 424 F.Supp.3d 674, 680 (N.D. Cal. 2019).  Section

19  3582(c)(1)(A)(i) now provides that the court may reduce an imposed term of

20  imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of

21  the defendant after the defendant has fully exhausted all administrative rights to appeal a

22  failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of

23  30 days from the receipt of such a request by the warden of the defendant's facility,

24  whichever is earlier," after considering the applicable factors set forth in section 3553(a),

25  if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that

26  such a reduction is consistent with applicable policy statements issued by the Sentencing

27  Commission."

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### B.      Requirements for Relief

As applicable to defendant's motion, compassionate release is warranted if the court finds that extraordinary and compelling reasons warrant such a reduction, after considering the applicable § 3553(a) factors.[2]

As mentioned above, before the First Step Act, only the BOP director could file a motion for compassionate release.  Those motions were governed by the applicable policy statement at United States Sentencing Guideline § 1B1.13.  Indeed, the opening language of § 1B1.13 is: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)."  (emphasis added).  The policy statement then set forth the test for courts to apply when ruling on those motions, including a determination that extraordinary and compelling reasons warranted the reduction, and that the defendant is not a danger to public safety.  The policy statement included commentary with application notes, which set forth specific circumstances that would qualify as "extraordinary and compelling" based on the defendant's (1) medical condition, (2) age, or (3) family circumstances.  U.S.S.G. § 1B1.13, cmt. n.1.

When the First Step Act amended section 3582, it was unclear whether § 1B1.13 remained an "applicable" policy statement.  At first, many courts, including this one, found that § 1B1.13 was applicable even to defendant-filed motions.  See, e.g., United States v. Eberhart, 448 F.Supp.3d 1086 (N.D. Cal. 2020).  However, numerous circuit courts, including the Ninth Circuit, have now concluded that the current version of § 1B1.13 "is not an applicable policy statement" for defendant-filed motions for compassionate release.  See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021); see also United States v. Brooker, 976 F.3d 228 (2nd Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

While the § 1B1.13 policy statement is no longer binding, it may still "inform a

---

[2] As a threshold matter, the government concedes that defendant has met the administrative exhaustion requirement for purposes of this motion.  See Dkt. 529 at 3.

district court's discretion" for what constitutes extraordinary and compelling reasons warranting release.  See Aruda, 993 F.3d at 802.

### 1.    Extraordinary and Compelling Reasons

Although section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary and compelling circumstances," the application notes to the § 1B1.13 policy statement identify three sets of such circumstances: "medical condition of the defendant," "age of the defendant," and "family circumstances."  U.S.S.G. § 1B1.13, cmt. n.1.  In this case, defendant's motion is based on his medical condition.

The policy statement defines physical or medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(A).  Again, while the policy statement is no longer binding, the court does find it persuasive.

Defendant argues that he suffers from asthma, which is a condition identified by the Centers for Disease Control ("CDC") as increasing the risk of serious illness or death as a result of contracting the coronavirus.  Dkt. 523 at 1.  Defendant asserts that he is suffering effects such as shortness of breath and general fatigue.  Id. at 3.  Defendant further argues that "there is no evidence a vaccine will be effective."  Dkt. 523 at 2.

The government argues that defendant's BOP medical records indicate that his asthma is "mild and intermittent."  Dkt. 529 at 13.  See Dkt. 529 at 14.  At his most recent documented doctor's appointment in June 2021, defendant denied any "short[ness] of breath, wheezing, [and/or] night cough."  Id. at 13.  The government further points out that defendant already contracted the coronavirus in December 2020 and recovered approximately two weeks later.  Id. at 3.  Defendant also received both doses of the Pfizer vaccine, and has been fully vaccinated since May 2021.  Id. at 3.  Finally, the

government points out that defendant is 34 years old, which is not an age associated with higher risk of COVID-19 complications.  Dkt. 443 at 3.

The court concludes that defendant's health status does not constitute extraordinary and compelling circumstances warranting release.  While the COVID-19 vaccines may not provide absolute protection against all infections, the evidence so far shows that they do provide significant protection against severe illness and death resulting from the coronavirus.  See, e.g., United States v. Meza-Orozco, 2021 WL 3630519 (W.D. Wash. Aug. 17, 2021) ("The Court understands that the science is still evolving as to vaccine efficacy and the Delta variant, but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death.").  In addition, while defendant's medical records do show a diagnosis of asthma, they also indicate that defendant's condition is controlled with medication.  Thus, defendant's medical condition does not diminish his ability to provide self-care within the environment of the correctional facility, nor is it a condition from which he is not expected to recover.

The court also rejects the blanket argument that the existence of COVID-19 renders every prisoner's sentence "more punitive" and in need of reduction.  Accordingly, the court finds that the COVID-related conditions of confinement do not constitute extraordinary and compelling circumstances warranting compassionate release.

The court further notes that, even if the court were to find that the totality of the circumstances presented by defendant were sufficiently extraordinary and compelling to warrant release, his motion would still be denied due to the court's consideration of the § 3553(a) sentencing factors, described as follows.

**2.    Section 3553(a) Factors**

Having considered the applicable § 3553(a) factors, the court further finds that a reduction of defendant's sentence would not serve the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, or to avoid

7

1  unwarranted sentence disparities among defendants with similar records who have been

2  found guilty of similar conduct.  See 18 U.S.C. § 3553(a)(2)(A)–(C).

3      Looking to the nature and circumstances of the offense and the history and

4  characteristics of the defendant, defendant was involved with a violent gang for many

5  years, participated in a violent crime that resulted in a person's death, and continued to

6  associate with the gang even after that incident.  At sentencing, defendant was

7  sentenced to the low end of his Guidelines sentence range of 168 to 210 months.

8  Although the parties do not agree on the amount of time already served by defendant,

9  even taking defendant's calculation as correct, he has served approximately 96 months

10  of a 168-month sentence that was already at the low end of the Guidelines.  The court

11  finds that a reduction of the sentence to approximately 96 months would not reflect the

12  seriousness of the offense, promote respect for the law, provide just punishment for the

13  offense, or afford adequate deterrence to criminal conduct.  Moreover, a reduction would

14  create an unwarranted disparity among defendants with similar records who have been

15  found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).

16      On balance, the court finds that the relevant § 3553(a) factors do not support

17  defendant's request for a reduction in sentence.

18  **III.    CONCLUSION**

19      For the reasons set forth above, the motion for reduction of sentence pursuant to

20  the compassionate release provision of § 3582(c)(1)(A) is DENIED.

21      The government has also filed a motion to seal exhibits that include personally

22  identifying information and medical information.  See Dkt. 530.  The motion to seal is

23  GRANTED.

24      **IT IS SO ORDERED.**

25  Dated:  October 26, 2021

26                                     ____/s/ Phyllis J. Hamilton____

27                                     PHYLLIS J. HAMILTON
                                       United States District Judge

28

United States District Court
Northern District of California